**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HEATHCOTE HOLDINGS CORP., INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 10 C 1471 |
| vs. ) | |
| ) | JURY DEMANDED |
| LEAPFROG ENTERPRISES, INC., ) | |
| ) | Judge Hon. David H. Coar |
| Defendant. ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO CITE ADDITIONAL AUTHORITY
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Heathcote Holdings Corp., Inc. ("plaintiff"), through its counsel, respectfully moves to cite additional authority in opposition to defendant's motion to its complaint. In support of this motion, plaintiff respectfully states:

1.     In its complaint, plaintiff alleges that defendant has violated 35 U.S.C. § 292 by falsely marking its products with the intent to deceive the public. Defendant has moved to dismiss that complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On June 25, 2010, plaintiff filed its opposition to defendant's motion to dismiss.

2.     In its opposition memorandum, plaintiff responded to defendant's arguments that it lacked standing to bring its claim and that it failed to sufficiently plead that defendant falsely marked its products with the intent to deceive the public.

3.     A recent decision issued by the Northern District Court of Texas, *Patent Compliance Group, Inc. v. Interdesign, Inc.*, No. 10-0404 (June 28, 2010), supports the argument that plaintiff has standing to bring its claims and has sufficiently pled the element of defendant's intent to deceive the public. (A copy of the opinion of the Court

in *Interdesign* is attached hereto as Exhibit A).  In that case, the Court, in a similar case

with similar allegations, addressed and rejected the same arguments Leapfrog advances in

its motion to dismiss under Rules 12(b)(1) and 12(b)(6).[1]

5.     The *Interdesign* opinion was issued after plaintiff filed its opposition and,

therefore, plaintiff did not have the opportunity to cite the decision sooner.  Accordingly,

plaintiff asks that it be allowed to cite the case in further opposition to defendant's

motion to dismiss.

WHEREFORE, plaintiff respectfully requests leave to cite *Patent Compliance*

*Group, Inc. v. Interdesign, Inc.*, No. 10-0404 (June 28, 2010), as additional authority in

opposition to defendant's motion to dismiss.

Respectfully Submitted,

*HEATHCOTE HOLDINGS
CORP., INC.*

By:   _/s/  John C. Ellis_

Matthew S. Miller
LAW OFFICES OF MATTHEW S. MILLER, LTD.
111 W. Washington, Suite 1100
Chicago, IL 60602
(312) 251-6066

Richard J. Prendergast
Michael T. Layden
RICHARD J. PRENDERGAST, LTD.
111 W. Washington, Suite 1100
Chicago, IL  60602
(312) 641-0881

---

[1] The Court in *Interdesign* also denied a defense request for a stay.  Thus, to the extent defendant reargues
the stay issue in its reply, *Interdesign* is instructive.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATENT COMPLIANCE GROUP, INC., | § | |
| | § | |
| Relator, | § | |
| | § | |
| v. | § | 3:10-CV-0404-P |
| | § | |
| INTERDESIGN, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Now before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Motion to Stay, and Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b), filed on April 4, 2010. Plaintiff filed Responses to all Motions on May 12, 2010. Defendant filed Replies to all Responses on June 4, 2010. After reviewing the parties' briefings, the evidence, and the applicable law, the Court DENIES Defendant's Motion to Dismiss pursuant to Rule 12(b)(1), Motion to Stay, and Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b).

## I.    Background

Under federal law, entities may not mark unpatented articles with the word "patent" for the purpose of deceiving the public. 35 U.S.C. § 292(a). Pursuant to this provision, Plaintiff brings a qui tam false marking suit and seeks penalties under 35 U.S.C. 292(b). (Compl. ¶ 16.) Plaintiff alleges that after United States Patent No. D336,842 expired on June 29, 2007, Defendant continued to mark the patent number on products with the intention of deceiving the public. (*Id.* at ¶¶ 23-27, 30-36.) The specific patent in question is a double hook that can attach to a doorframe to hang items. (*Id.* at ¶¶ 10-14.) Defendant now moves to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim. Notwithstanding

these dispositive motions, Defendant also moves to stay pending a ruling from the Federal

Circuit. (Dkt. # 11, pp. 1-2; Dkt. # 12, pp. 1-2; Dkt. # 13, pp. 1-2.)

## II.   Qui Tam Causes of Action

Qui tam is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac*

*parte sequitur*, meaning a person "who pursues this action on our Lord the King's behalf as well

as his own." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 (U.S.

2000) (quoting 3 W. Blackstone, Commentaries *160). "Qui tam lawsuits have been used

throughout American and English history as a means to discover and to prosecute fraud." *Riley*

*v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 752 (5th Cir. 2001). In a qui tam action, a private

individual, known as a "relator" sues as "a partial assignee of the United States." *Vt. Agency*,

529 U.S. at 774 n.4 (emphasis omitted). Furthermore, a qui tam action "is strictly a creature of

statute" with no common law right to bring suit otherwise. *Stalley v. Catholic Health Initiatives*,

509 F.3d 517, 521 (8th Cir. 2007) (*quoting United Seniors Ass'n, Inc. v. Philip Morris USA*, 500

F.3d 19, 23 (1st Cir. 2007)). Thus, a specific statute must give a private entity a right not

otherwise available to seek relief on behalf of the government.

## III.   35 U.S.C. § 292—False Marking Statute

The "false marking statute," 35 U.S.C. § 292, is a criminal statute with a civil remedy.

*Pequignot v. Solo Cup Co.*, No. 2009-1547, 2010 U.S. App. LEXIS 11820, at *18-19 (Fed. Cir.

June 10, 2010) (referencing 16 James Wm. Moore et al., Moore's Federal Practice--Civil §

107(B)(2)) (stating that an action under 35 U.S.C. § 292 is civil in form even when it is criminal

in nature). 35 U.S.C. § 292 provides in relevant part:

(a) . . .

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public . . .

. . . .

Shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292; *see also Pequignot*, 2010 U.S. App. LEXIS 11820, at *3, 10, 15. Consistent

with these provisions, a party may pursue a qui tam action under this statute. *Vt. Agency of*

*Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 (U.S. 2000) (referencing 35

U.S.C. § 292 as a qui tam action that allows recovery against a person who falsely marks

patented articles); *see also Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1303 (Fed. Cir.

2009) (holding the false marking statute explicitly permits qui tam actions).

The purpose of the false marking statute is to protect the public by stabilizing an

otherwise under-enforced area of the law. *Juniper Networks v. Shipley*, No. C 09-0696 SBA,

2010 U.S. Dist. LEXIS 24889, at *15-16 (N.D. Cal. Mar. 16, 2010); *see also Forest Group*, 590

F.3d at 1303-04 ("Acts of false marking deter innovation and stifle competition in the

marketplace."). "By permitting members of the public to sue on behalf of the government,

Congress allow[s] individuals to help control false marking." *Zojo Solutions, Inc. v. Stanley*

*Works*, No. 10 C 1175, 2010 U.S. Dist. LEXIS 46407, at *4 (N.D. Ill. May 12, 2010). In

addition, unlike the False Claims Act, the false marking statute does not require a plaintiff to

provide the government with notice of a proposed qui tam action. *Stauffer v. Brooks Bros., Inc.*,

No. 08-cv-10369 (SHS), 2009 U.S. Dist. LEXIS 51166, at *7 (S.D.N.Y. June 15, 2009); *see also*

*Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, 722 (E.D. Va. 2009), *aff'd in part and vacated in part*, No. 2009-1547, 2010 U.S. App. LEXIS 11820 (Fed. Cir. June 10, 2010).

## IV.    Legal Standards and Analysis

Defendant files three separate motions: 1) motion to dismiss pursuant to Rule 12(b)(1); 2) motion to stay; and 3) motion to dismiss pursuant to Rules 12(b)(6) and 9(b).  (Dkt. # 11; Dkt. # 12; Dkt. # 13.)  The Court addresses these motions.

### a.   Motion to Dismiss: 12(b)(1)

Defendant moves to dismiss pursuant to Rule 12(b)(1) on the basis that Plaintiff does not have standing under Article III of the United States Constitution.  (Dkt. 11, pp. 3-4.)  To this end, Defendant contends Plaintiff fails to show the government suffered an injury.  (*Id.* at 4, 6.)

### i.   12(b)(1) Legal Standard—Standing

A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. Pro. 12(b)(1); *see also Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Where, as here, a motion attacks subject matter jurisdiction on the face of the complaint, a court must consider all allegations in the complaint as true.  *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).  A court may also consider—in the light most favorable to the plaintiff—any documents referenced in the complaint.  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *see also Falzett v. Pocono Mt. Sch. Dist.*, 150 F. Supp. 2d 699, 701 (M.D. Pa. 2001); *Mercado Azteca, LLC v. City of Dallas*, No. 3:03-CV-1145-B, 2004 U.S. Dist. LEXIS 18535, at *6-7 (N.D. Tex. Sept. 14, 2004).

Subject matter jurisdiction fails if the plaintiff lacks Article III standing.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986); *O'Shea v. Littleton*, 414 U.S. 488,

493-95, 504 (1974); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("[S]tanding is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court.") Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action, pursuant to Rule 12(b)(1), for want of subject matter jurisdiction. *See Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997); *Int'l Transactions v. Embotelladora Agral Regiomontana*, 277 F. Supp. 2d 670, 676 (N.D. Tex. 2002).

The crux of any standing inquiry is whether a plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Moreover, the practical implication of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

At its "irreducible constitutional minimum," Article III standing requires a plaintiff to demonstrate:

> (1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Commc'n Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 128 S.Ct. 2531, 2535 (2008) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, (1992)); *see also Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217-18 (5th Cir. 2002). All three elements must be present to establish standing. *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000). Furthermore, since these elements "are not mere pleading requirements but rather an indispensable part of the

plaintiff's case, each element must be supported in the same way as any other matter on which

the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at

the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Gladstone, Realtors v.*

*Village of Bellwood*, 441 U.S. 91, 114-15 (1979).

In qui tam actions, the relator pursues an action on behalf of the government. Under

these actions, a statute confers standing to the relator when the government suffers an injury.[1]

*Vt. Agency*, 529 U.S. at 774; *see also Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229,

1233 (11th Cir. 2008); *Juniper Networks v. Shipley*, No. C 09-0696 SBA, 2010 U.S. Dist. LEXIS

24889, at *16-17 (N.D. Cal. Mar. 16, 2010); *Zojo Solutions, Inc. v. Stanley Works*, No. 10 C

1175, 2010 U.S. Dist. LEXIS 46407, at *5-6 (N.D. Ill. May 12, 2010) (denying Rule 12(b)(1)

motion to dismiss for lack of standing pursuant to the "Take Care Clause" of U.S. Const. art. II,

§ 3) (referencing *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009)).

### ii. Analysis

The main thrust of Defendant's argument for Rule 12(b)(1) dismissal is Plaintiff fails to

plead an injury in fact to the government justifying Article III standing. (Dkt. # 11, p. 7.) To

advance these contentions, Defendant relies on the *Stauffer* district court findings and asserts the

---

[1] Qui tam statutes have a long history of surviving constitutional attacks premised on lack of standing. *See, e.g.,*
*Associated Indus. of N.Y. State, Inc. v. Ickes*, 134 F.2d 694, 704 (2d Cir. 1943) ("Congress can constitutionally enact
a statute conferring on any non-official person . . . authority to bring suit to prevent action by an officer in violation
of his statutory powers; for then, in like manner, there is an actual controversy, . . . even if the sole purpose is to
vindicate the public interest.") (footnote omitted), *vacated as moot*, 320 U.S. 707 (1943); *Public Interest Bounty
Hunters v. Bd. of Governors*, 548 F. Supp. 157, 161 (N.D. Ga. 1982) (qui tam statutes "provide a private citizen who
would otherwise have no judicially cognizable 'interest' in rights protected by particular federal substantive
provisions with an interest sufficient to give that individual standing to sue to enforce these provisions"); *Flast v.
Cohen*, 392 U.S. 83, 120 (1968) (Harlan, J, dissenting) (in qui tam actions, the courts have "repeatedly held that
individual litigants, acting as private attorneys-general, may have standing as 'representatives of the public
interest'") (*quoting Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 14, (1942)).

pleadings do not rise above conjecture to substantiate an injury in fact.[2] *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 254 (S.D.N.Y. 2009); (Dkt. # 11, p. 5.) The Court reviews *Stauffer* in conjunction with comparable case law to determine Plaintiff's Article III standing.

In *Stauffer*, the district court ruled that a relator did not have Article III standing because its pleadings only totaled two conclusory statements "buried in a forty page complaint." *Stauffer v. Brooks Bros.*, 615 F. Supp. 2d at 254. The complaint alleged the defendants' conduct: 1) "wrongfully quelled competition with respect to such bow tie products thereby causing harm to the economy of the United States," and 2) by "wrongfully and illegally advertis[ing] patent monopolies that they do not possess" the defendants have "benefitted in at least maintaining their considerable market share . . . in the high-end haberdashery marketplace." *Id.*

The *Stauffer* court found the relator failed "to allege with any specificity an actual injury to any individual competitor, to the market for bow ties, or to any aspect of the United States economy.[3] That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, is purely speculative and plainly insufficient to support standing." *Id.* The court also emphasized that the product in question "[was] not made by defendants but is instead provided to

---

[2] In *Stauffer*, the court found the complaint failed to state a legally cognizable injury. *Stauffer*, 615 F. Supp. 2d at 254 ("Thus, allegations such as plaintiff's that a defendant improperly marked an unpatented article as patented, standing alone, neither alleges a violation of section 292 nor pleads an injury in fact to the sovereign interest of the United States assignable to a qui tam plaintiff."). Importantly, the court did not rule on the constitutionality of qui tam Article III standing under 35 U.S.C. § 292. *See Stauffer v. Brooks Bros., Inc.*, No. 08-cv-10369 (SHS), 2009 U.S. Dist. LEXIS 51166, at *9 (S.D.N.Y. June 15, 2009) ("Moreover, while, as noted, Brooks Brothers raised several challenges to the constitutionality of section 292 in its moving papers, the Court did not address those arguments at any time and did not decide them in its Opinion.").

[3] The *Stauffer* court relied partly on *Clontech* to find that the relator must sufficiently plead intent to deceive as part of the injury in fact requirement for Article III standing. *Stauffer v. Brooks Bros.*, 615 F. Supp. 2d at 254 (citing *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Reviewing the opinion in *Clontech*, the Federal Circuit only addressed intent to deceive in the context of a prima facie case for false marking and *not* for Article III standing. *See Clontech Labs.*, 406 F.3d at 1352. ("We see no reason to interpret the statute differently to render it a statute of strict liability for mismarking."). The Court finds this to be the correct approach and therefore addresses intent to deceive only in the context of a prima facie case for false marking.

defendants and to many of Brooks Brothers' competitors by a third party." *Id.* at 255.

Moreover, "the relevant mark used by Brooks Brothers, far from quelling competitors, is used by

them as well . . . and are marked with the exact same language." *Id.* at 255.

While the court in *Stauffer* found two conclusory statements did not satisfy Article III

standing, in *Juniper Networks*, the court addressed the same issue and ruled that the relator had

standing simply by bringing suit on behalf of the government.[4] *Juniper Networks v. Shipley*, No.

C 09-0696 SBA, 2010 U.S. Dist. LEXIS 24889, at *17 (N.D. Cal. Mar. 16, 2010). The court

relied on *Vermont Agency* and *Woods*, finding a complaint that merely claimed relief "on behalf

of the United States" for alleged violations of 35 U.S.C. § 292 sufficiently pled injury in fact. *Id.*

("In this case, Juniper expressly brings this suit 'on behalf of the United States,' based on

Shipley's alleged violations of the [35] U.S.C. § 292. . . . This is sufficient under *Vermont*

*Agency* to establish standing.") (*citing Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529

U.S. 765, 773-74 (2000); *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 97-98 (2d Cir.

2009)).

Similar to *Juniper Networks*, during the procedural stage of a motion to dismiss, the

district court in *Pequignot* found that a qui tam statute—in and of itself—conferred Article III

standing to a relator seeking false marking penalties.[5] *Pequignot v. Solo Cup Co.*, 640 F. Supp.

2d 714, 724 (E.D. Va. 2009), *aff'd in part and vacated in part*, No. 2009-1547, 2010 U.S. App.

LEXIS 11820 (Fed. Cir. June 10, 2010). Quoting the court, "§ 292(b) is indeed a qui tam statute,

---

[4] The Court notes that the relator in *Stauffer* was a private citizen, whereas the relator in *Juniper Networks* was a corporation involved in previous patent litigation with the defendant. The *Juniper Neworks* court did not address this distinction and the Court finds it inconsequential to Article III analysis. *See Pequignot v. Solo Cup Co.*, No. 07-cv-897, 2009 U.S. Dist. LEXIS 26020, at *7-8 (E.D. Va. Mar. 27, 2009) (finding the "plain language of the statute" precludes limiting "any person" to "competitors"); *Pentlarge v. Kirby*, 19 F. 501, 503 (S.D.N.Y. 1884) (the false marking statute grants a cause of action to "whomsoever it may please to sue").

[5] Similar to the *Stauffer* relator, the *Pequignot* relator was a private citizen—not an industry competitor. *Pequignot v. Solo Cup Co.*, No. 2009-1547, 2010 U.S. App. LEXIS 11820, at *6 (Fed. Cir. June 10, 2010)

and therefore, that Pequignot has Article III standing, as a partial assignee of the government's

claims, to sue Solo for violations of § 292." *Id.*

To complement this case law, the Federal Circuit enumerates several potential injuries

from falsely marking patents:

> The marking and false marking statutes exist to give the public notice of patent
> rights. Acts of false marking deter innovation and stifle competition in the
> marketplace. If an article that is within the public domain is falsely marked,
> potential competitors may be dissuaded from entering the same market. False
> marks may also deter scientific research when an inventor sees a mark and
> decides to forego continued research to avoid possible infringement. False
> marking can also cause unnecessary investment in design around or costs incurred
> to analyze the validity or enforceability of a patent whose number has been
> marked upon a product with which a competitor would like to compete.

*Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302-03 (Fed. Cir. 2009) (citations

and quotations omitted). Moreover, "[i]n each instance where it is represented that an

article is patented, a member of the public desiring to participate in the market for the

marked article must incur the cost of determining whether the involved patents are valid

and enforceable." *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356 n.6 (Fed.

Cir. 2005). Furthermore, "[t]hese injuries occur each time an article is falsely marked."

*Forest Group*, 590 F.3d at 1303.

As *Forest Group* suggests, an injury suffered under the false marking statute is not

always tangible and readily identifiable. This notion is further affirmed by the district courts in

*Pequignot* and *Juniper Networks. See Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d at 724 n.15.

("Although some scholars have argued that the government can assign only proprietary, and not

purely sovereign interests [i.e., an interest arising from a violation of law], the Supreme Court

made no such distinction in its discussion of assignment in *Vermont Agency*, and this Court

declines to adopt this distinction.") (citations and punctuation omitted); *Juniper Networks*, 2010

U.S. Dist. LEXIS 24889, at *17. ("Such injury may take the form of 'the injury to [the United

States'] sovereignty arising from violation of its laws and the proprietary injury resulting from

the alleged fraud.'") (*citing Vt. Agency*, 529 U.S. at 771.)  While Defendant relies on the findings

in *Stauffer*, the Court views the following passage as a departure from prevailing case law:

> [A]bsent an alleged injury in the form of deception to the public, a plaintiff has
> not alleged a violation of the law, and therefore there exists no corresponding
> harm to the United States' "sovereign interest." Thus, allegations such as
> plaintiff's that a defendant improperly marked an unpatented article as patented,
> standing alone, neither alleges a violation of section 292 nor pleads an injury in
> fact to the sovereign interest of the United States assignable to a qui tam plaintiff.
> Moreover, the Court doubts that the Government's interest in seeing its laws
> enforced could alone be an assignable, concrete injury in fact sufficient to
> establish a qui tam plaintiff's standing.

*Stauffer*, 615 F. Supp. 2d at 254.  Even so, particularly with regard to the public and social

injuries espoused in *Forest Group*, recognizing harm without a readily apparent injury is not a

unique concept (i.e., victimless crimes).  Further, as *Clontech* instructs, prevention of social

injuries related to false marking serves to boost consumer confidence in the marketplace.

*Clontech Labs.*, 406 F.3d at 1356 n.6.  Moreover, it is important to note that the *Stauffer* district

court emphasized that the complaint only made two conclusory allegations buried in forty pages

of pleadings and that other industry competitors used falsely marked the articles as well.

    Reviewing the complaint in light of the existing case law, Plaintiff asserts the following

injuries on behalf of the government: marketplace competition deterrence, harm to the Patent

Compliance Group, harm to the United States, and harm to the public by misleading impressions.

(Compl. ¶¶ 4-5, 20-21.).  Viewing the pleadings most favorably to Plaintiff, it alleges social

injuries very similar to those stated in *Forest Group*.  (*Id.*)  Moreover, these pleadings are

sufficient under both *Pequignot* and *Juniper Networks* because Plaintiff brings suit on behalf of

the government and alleges public injuries recognized under case law as the result of falsely

marked patents. As such, the Court finds the pleadings satisfy Article III standing under the false marking statute.

To the extent Defendant contends that Plaintiff may not exercise the government's duty to ensure laws are faithfully obeyed, this is directly contrary to the policy behind qui tam actions. *See Stauffer*, 615 F. Supp. 2d at 254 ("Section 292 thus assigns to Stauffer—or to 'any person' —the authority to bring suit to vindicate cognizable injuries incurred on the public or the United States through violation of its provisions."); (Dkt. # 11, p. 7.) Though Defendant relies on footnote 5 in *Stauffer* to distinguish between proprietary and sovereign interests, a qui tam action under the false marking statute furthers, among other things, the public's interests which are inherently sovereign in nature. *See Forest Group*, 590 F.3d at 1303-04 (Fed. Cir. 2009) ("By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking."); (Dkt. # 11, pp. 7-9.) The Court also notes a district court's recent order denying an appeal for a previous denial of a Rule 12(b)(1) motion:

> Thus, while Defendant is no doubt correct that the issues it raises are controlling questions of law as to which there is substantial ground for difference of opinion, the Court does not believe that immediate appeal would materially advance this litigation. To the contrary, the Court believes that the parties and the judicial system will be better served by proceeding to discovery, summary judgment, and, if necessary, trial. Then, at the conclusion of the case, should Defendant wish to appeal the Court's decision it will be able to present the appellate court with a fully developed record along with all the potentially appealable issues, both legal and factual.

*Harrington v. CIBA Vision Corp.*, No. 3:08-cv-251-FDW, 2009 U.S. Dist. LEXIS 58005, at *2-3 (W.D.N.C. June 17, 2009) (ruling in a 35 U.S.C. § 292 false marking case).

Therefore, taking the pleadings as true and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has Article III standing. Accordingly, the Court denies Defendant's motion to dismiss pursuant to Rule 12(b)(1).

### b.  Motion to Stay

Similar to the motion to dismiss for want of subject matter jurisdiction, Defendant moves to stay pending the Federal Circuit's review of *Stauffer* and the constitutional standing of qui tam plaintiffs under Article III.   (Dkt. # 13, pp. 1-3.)  In light of the previous analysis on Article III standing, the Court denies this motion as well.

### i.  Legal Standard

A district court's discretionary authority to issue a stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 243 (5th Cir. 2009).

The party moving to stay "must make out a clear case of hardship or inequity" that someone will suffer harm should the judicial proceedings go forward.  *Landis*, 299 U.S. at 255. Moreover, "only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* "Whether such a circumstance exists depends on a balance between the harm of moving forward and the harm of holding back." *Ali v. Quarterman*, No. 09-40612, 2010 U.S. App. LEXIS 10934 (5th Cir. May 28, 2010).  As such, a district court must always balance competing interests and rule in favor of the position that best advances the interests of justice and judicial economy.

### ii.  Analysis

To support its motion to stay, Defendant claims "the circumstances in which a private party has standing under Article III of the United States Constitution to bring an action for false

patent marking under 35 U.S.C. § 292(b) is an issue of first impression currently pending before the United States Court of Appeals for the Federal Circuit in *Stauffer v. Brooks Bros., Inc.*" (Dkt. # 13, pp. 1-2; Dkt. # 20, p. 4.) Notwithstanding these contentions, the Court considers there to be adequate case law to determine the sufficiency of a private (i.e. non-competitor) complaint under 35 U.S.C. § 292. Reviewing the *Stauffer* court's more recent order denying a motion for the Unites States to intervene, the order directly focused on the complaint and not on the relator's private party status.[6] In its order granting dismissal, the *Stauffer* court stipulated "the complaint fail[ed] to allege with any specificity an actual injury to any individual competitor, to the market for bow ties, or to any aspect of the United States economy." *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248, 255 (S.D.N.Y. 2009). Thus, this ruling rests squarely on the sufficiency of the complaint, which can, in turn, be determined by relevant case law.

In its motion, Defendant calls attention to a revised version of S 515, which is the pending Patent Reform Act of 2010. H.R. 4954. (Dkt. # 13, p. 4.) Though it may appear that the bill would eliminate qui tam standing in false marking suits going forward, the Court is still bound by the present statute and precedent. For additional support, Defendant also lists several courts that have stayed pending a ruling by the Federal Circuit. (Dkt. # 13, p. 8; Dkt. # 20, pp. 9-10.); *see also San Francisco Tech., Inc. v. Adobe Sys.*, No. C 09-6083 RS, 2010 U.S. Dist. LEXIS 40216, at *12 (N.D. Cal. Apr. 13, 2010) ("There appears to be little dispute that if the Federal Circuit affirms the decision in *Stauffer* there likely will be no way to distinguish it or to otherwise avoid its application to this case. Conversely, should Stauffer be reversed, that likely

---

[6] "The Court's Opinion in particular made no findings and reached no conclusions with respect to the constitutionality of section 292. . . . [The Opinion] did no more than evaluate the complaint and construe the relevant statute consistent with established case law to find that this plaintiff on these facts lacked standing to proceed." *Stauffer v. Brooks Bros., Inc.*, No. 08-cv-10369 (SHS), 2009 U.S. Dist. LEXIS 51166, at *9 (S.D.N.Y. June 15, 2009)

will preclude any further argument that SF Tech lacks standing here."). Acknowledging that reasonable minds differ in this area of law, the Court declines to stay at this time.

As an order to stay proceedings is within the inherent discretion of district courts, each case presents competing issues that a court must weigh. *See Landis*, 299 U.S. at 254. Though qui tam actions are often legal moving targets—partly due to the distaste for any venture that seeks profit by launching suits without personal injury—the precedent to date provides sufficient guidance for courts to determine Article III standing under the false marking statute. *See, e.g., Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714, 728-29 (E.D. Va. 2009), *aff'd in part and vacated in part*, No. 2009-1547, 2010 U.S. App. LEXIS 11820 (Fed. Cir. June 10, 2010) ("The only practical impact of the qui tam provisions of § 292(b) appears to be its potential to benefit individuals, such as the plaintiff in the case at bar, who have chosen to research expired or invalid patent markings and to file lawsuits in the hope of financial gain. . . . The history of . . . qui tam actions in general, indicates that when these actions have been subject to abuse by profit-seekers with little public motivation, legislatures, both in the United States and England have reacted.").

Weighing the interests of the parties, the benefit of a stay to clear up potential ambiguity does not counter the parties' right to a fair trial on the merits when the law is sufficiently in place for adjudication. *Cf. Harrington v. CIBA Vision Corp.*, No. 3:08-cv-251-FDW, 2009 U.S. Dist. LEXIS 58005, at *2-3 (W.D.N.C. June 17, 2009). Therefore, the Court denies Defendant's motion to stay.

### c. Motion to Dismiss: 12(b)(6) and 9(b)

In addition to its motions to stay and dismiss pursuant to Rule 12(b)(1), Defendant moves to dismiss under Rules 12(b)(6) and 9(b), contending Plaintiff fails to plead sufficient facts to

support allegations of deceitful intent and the false marking statute should be subject to heightened pleading standards.  (Dkt. # 12, pp. 1-2.); *see also* Fed. R. Civ. Pro. 12(b)(6), 9(b).

### i.  12(b)(6) and 9(b) Legal Standards

Rule 12(b)(6) provides for the dismissal of a complaint when a defendant establishes that the plaintiff failed to state a claim for which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal v. Ashcroft*, - - - U.S. - - - 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts.  *Id.* at 1949-50 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (*quoting Twombly*, 550 U.S. at 555).

Additionally, the factual allegations of a complaint must state a plausible claim for relief.  *Id.*  A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct."  *Id.*; *see also Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir. 1986).  Moreover, when determining whether dismissal should be granted, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *See Capital Parks, Inc. v. Se. Adver. and Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

The purpose of a motion to dismiss under Rule 9(b) is to ensure that the defendant is given at least minimum notice of the plaintiff's claims.  *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 775 (7th Cir. 1995); *see also Jennings v. Emry*, 910 F.2d 1434, 1436 (7th

Cir. 1990) (a complaint must be clear enough to avoid requiring the defendant to sift through pages in search of what the plaintiff asserts).  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  The Federal Rules require a higher standard of pleading in matters of fraud to ensure that the plaintiff properly investigates the facts giving rise to the claim and to prevent the plaintiff from filing baseless claims in an attempt to uncover wrongdoing through discovery. *Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1216 (E.D. La. 1990).  To satisfy the standard of particularity, a party must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (quotations and citations omitted).

### ii.  35 U.S.C. § 292 Legal Standard

A plaintiff must establish two elements for a 35 U.S.C. § 292 false marking action: 1) the defendant marked an unpatented article, 2) with the intent to purposefully deceive the public. *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009); *see also Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).  Since the defendant must act with "the purpose of deceiving the public," mere knowledge of falsely marked articles is not enough—the statute requires purposeful deceit.  35 U.S.C. § 292(a); *see also Pequignot v. Solo Cup Co.*, No. 2009-1547, 2010 U.S. App. LEXIS 11820, at *16 (Fed. Cir. June 10, 2010).

Since 35 U.S.C. § 292 provides for a civil remedy within a criminal statute, a person acts purposefully "if he consciously desires that result, whatever the likelihood of that result happening from his conduct, while he is said to act knowingly if he is aware that that result is practically certain to follow from his conduct, whatever his desire may be as to that result."

*Pequignot.*, 2010 U.S. App. LEXIS 11820, at *16 (*quoting United States v. Bailey*, 444 U.S. 394, 404 (1980) (quotations and punctuation omitted). Even so, the combination of a false statement with knowledge that the statement was false creates an inference and rebuttable presumption of the defendant's intent to deceive the public. *Id.*; *see also Clontech Labs.*, 406 F.3d at 1352-53 ("[T]he fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the *inference* that there was a fraudulent intent."); *see also Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009).

### iii. Analysis

To support allegations that Plaintiff fails to state a claim, Defendant contends that 35 U.S.C. § 292 is a fraud-based claim, subject to the heightened pleading standards of Rule 9(b). (Dkt. # 12, p. 3.) Specifically, Defendant asserts that Plaintiff's complaint fails to allege fraudulent acts with particularity and fails to properly plead deceitful intent.[7] (*Id.* at 4.)

To these ends, Defendant relies on *Brinkmeier* and asserts that the mere presence of products with expired patent labels in the stream of commerce does not create an inference of deceptive intent. *Brinkmeier v. Graco Children's Prods., Inc.*, 684 F. Supp. 2d 548, 553 (D. Del. 2010); (Dkt. # 12, p. 7.) In *Brinkmeir*, the court found that the defendant continued to mark

---

[7] The Court declines to make findings on the application of Rule 9(b). Even if the Rule 9(b) heightened standards apply in the instant case, the complaint—viewing the pleadings in the light most favorable to Plaintiff—is sufficient to draw an inference of intent to deceive the public and establish a prima facie case under the false marking statute. Moreover, to the extent Plaintiff relies on *Juniper Networks*, this Court is not bound by its findings and neither the Fifth Circuit nor the Federal Circuit has adopted this position. *See Juniper Networks v. Shipley*, No: C 09-0696 SBA, 2009 U.S. Dist. LEXIS 40978, at *11-12 (N.D. Cal. May 13, 2009) (Granting dismissal because "Juniper's conclusory allegations that Shipley 'knew' his reference to the patents was 'false' are thus insufficient to plead an intent to deceive under section 292(a)"); (Dkt. # 12, p. 6.)

Similarly, to the extent that Defendant alleges Plaintiff failed to state that Defendant falsely marked its products, the Court finds Plaintiff sufficiently pled this element. (Dkt. # 12, p. 5.) In reaching this finding, the Court directs attention to pleadings that "Defendant knowingly marked the Patent Expired Product with the '842 patent after the patent expired," coupled with the '842 patent file with the United States Patent Office that details an expiration date of 2007 and a subsequent picture of the product in question labeled with a 2009 copyright and the '842 patent number. (Compl. ¶¶ 32-34, Ex. A-B.)

certain products with an expired patent number after the expiration date. *Id.* at 552. Notwithstanding these findings, the court ruled the following allegations were conclusory and void of a factual backing: "[the defendant] cannot have any reasonable belief that such products . . . are protected by such patents." *Id.* at 554; (Compl. ¶ 34.) Ultimately, the court dismissed all claims related to those conclusory statements because the allegations failed to establish the defendant's intent to deceive the public. *Brinkmeier, Inc.*, 684 F. Supp. 2d at 553.

While *Brinkmeir* declined to draw an inference of deceptive intent from pleadings that the defendant knowingly marked certain articles with an expired patent number, this ruling departs from *Clontech* and subsequent Federal Circuit case law. *See Clontech Labs.*, 406 F.3d at 1352-53; *Pequignot v. Solo Cup Co.*, No. 2009-1547, 2010 U.S. App. LEXIS 11820, at *15 (Fed. Cir. June 10, 2010) ("[T]he combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public."). At the pleadings stage—viewing all facts in the light most favorable to the plaintiff—allegations that a defendant knowingly mismarked an article with an expired patent (i.e. a false statement with knowledge) allows a court to infer intent to deceive the public. *Pequignot*, 2010 U.S. App. LEXIS 11820, at *16. Armed with actual documentation that a product was falsely marked, a court may draw an inference of the defendant's knowledge simply by the finite nature of patents and the ordeal an entity must go through to actively create and maintain a patent. Even so, this inference is not bulletproof and may be rebutted by evidence and through discovery as the case progresses. *Id.* (holding the presumption of intent to deceive can be rebutted through credible evidence).

In the instant case, Plaintiff advances three main allegations: 1) "Defendant knowingly marked the Patent Expired Product with the '842 patent after the patent expired;" 2) "Defendant intended to and has deceived the public by falsely marking (or causing to be marked) the patent

protection status of the Patent Expired Product;" and 3) "Defendant intended to deceive the public by marking the Patent Expired Product with the '842 patent after its expiration." (Compl. ¶¶ 30, 33, 35.)  To support these contentions, Plaintiff attached to the complaint: 1) the '842 patent file with the United States Patent Office that details an expiration date of 2007, and 2) a picture of the product in question labeled with a 2009 copyright and the '842 patent number.  (*Id.* at Ex. A-B.).  Plaintiff provides further support by alleging: Defendant retains legal counsel, has experience with patents, knows patents expire, knew the patent expired, and labeled products with the patent number after it expired.  (*Id.* at ¶¶ 18-19, 22, 25, 27-29, 34.)

Reviewing the pleadings in the light most favorable to Plaintiff, the Court draws an inference that Defendant intended to deceive the public.  As a sophisticated corporation with patent experience and available legal counsel, Plaintiff creates an inference that Defendant knew the patent expired.  Any argument to the contrary ignores the time sensitive nature of patents and the obligations incumbent on patent holders to protect their legal rights.  Similarly, an actual photograph of a product recently injected into the stream commerce with an expired patent number also creates an inference of a false statement.  Where, as here, Plaintiff pleads Defendant knew the patent expired and presents facts demonstrating that Defendant falsely marked articles, the Court infers purposeful deceit.  *See Clontech Labs.*, 406 F.3d at 1352-53.

While an inference of deceit is rebuttable, Defendant presents no evidence to the contrary to advance its position.  In particular, Defendant merely offers conclusory statements that it acted in good faith with no deceitful intentions.  *But see, e.g., Pequignot*, 2010 U.S. App. LEXIS 11820, at *20 ("Here, we agree with the district court that Solo has provided sufficient evidence that its purpose was not to deceive the public, and that Pequignot has provided no credible contrary evidence. . . . Solo has raised more than blind assertions of good faith."); (Dkt. # 12, pp.

2-5.) As such, Defendant fails to offer evidence sufficient to overcome the rebuttable

presumption that it acted with the intent to deceive the public. *See Clontech Labs.*, 406 F.3d at

1352. ("[T]he mere assertion by a party that it did not intend to deceive will not suffice to escape

statutory liability. Such an assertion, standing alone, is worthless as proof of no intent to deceive

where there is knowledge of falsehood.").

Consequently, since Plaintiff sufficiently pleads cognizable facts that Defendant falsely

marked an expired patent number on a product with the intent to deceive the public, Plaintiff

properly states a claim for relief under the false marking statute. Therefore, the Court denies

Defendant's motion to dismiss pursuant to Rules 12(b)(6) and 9(b).

## V.      Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss pursuant to

Rule 12(b)(1), Motion to Stay, and Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b).


**IT IS SO ORDERED.**

Signed this _28th_ day of June, 2010.


                              JORGE A. SOLIS
                              UNITED STATES DISTRICT JUDGE